UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARY F. ANKERICH                                                 CIVIL ACTION

VERSUS                                                                NO.  14-169

TERRY TERRELL, WARDEN                                    SECTION "F"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

I.        **Procedural history**

Petitioner, Cary Ankerich, is a state prisoner incarcerated in the Allen Correctional Center, in Kinder, Louisiana.  On January 9, 2012, he pleaded guilty to one count of simple burglary of an inhabited dwelling and one count of obscenity.  He was sentenced to twelve years imprisonment on the simple burglary charge, the first year to be served without the

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

benefit of probation, parole or suspension of sentence, and three years imprisonment on the obscenity charge.  On that same date, based on a prior theft conviction from Texas, he also pleaded guilty to being a second-felony offender.  Ankerich was resentenced on the simple burglary count to twenty years imprisonment, the first year to be served without benefit of probation, parole or suspension of sentence, to run concurrently with the three-year sentence.[2]

On or about December 19, 2012, Ankerich filed a *pro se* application for post–conviction relief with the state district court.[3]  That application was denied as procedurally barred, and alternatively on the merits, on January 31, 2013.[4]  Thereafter, he filed a related writ application with the Louisiana Fifth Circuit Court of Appeal.  On May 24, 2013, the Louisiana Fifth Circuit denied relief on the merits.[5]  His related supervisory writ application was denied by the Louisiana Supreme Court without reasons on December 2, 2013.[6]

On or about December 23, 2013, Ankerich filed his federal application for *habeas corpus*

---

[2] State Rec., Vol. 1 of 3, Minute entry of 1/9/12 and Transcript of guilty plea and sentencing held January 9, 2012, p. 11.

[3] State Rec., Vol. 1 of 3, Uniform Application for Post-Conviction Relief signed December 19, 2012.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  If that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed.

[4] State Rec., Vol. 1 of 3, State district court Order denying post-conviction relief signed January 31, 2013.

[5] State Rec., Vol. 1 of 3, *State v. Ankerich*, 13-KH-431 (La. App. 5th Cir. May 24, 2013) (unpublished writ ruling).

[6] *State ex rel. Ankerich v. State*, 2013-KH-1405 (La. 12/2/13), 126 So.3d 502.

relief.[7]  In his petition, Ankerich asserts two intertwined claims for relief: (1) that his guilty plea in the habitual offender proceedings was not truly knowing and voluntary because (2) his trial counsel was constitutionally ineffective for failing to investigate his prior convictions and allowing him to plead guilty to the multiple offender bill of information.[8]

The State filed a response conceding that the federal application is timely.  However, the State contends Ankerich has failed to exhaust his state court remedies because he did not properly present his first claim to the Louisiana Supreme Court.[9]

## II.    Exhaustion

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001). Generally, the federal exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in

---

[7]  Rec. Doc. No.1, Petition. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Ankerich signed the petition on December 23, 2013, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

[8] In his original petition, Ankerich included a claim alleging violation of due process and equal protection based on the trial court's post-conviction ruling that his claims were not cognizable.  However, in a subsequent amended petition Ankerich sought to clarify his claims for relief to this Court, conceding he was "mistaken" in challenging the trial court's ruling in this respect since the appellate court had expressly considered his claims on the merits.  Rec. Doc. No. 17, Motion for leave to amend § 2254 petition, p. 1; Rec. Doc. No. 19, Amended memorandum in support.  Because Ankerich no longer seeks to challenge this aspect of the state court's ruling, the Court will consider that third claim to have been withdrawn as per his amended petition.

[9] Rec. Doc. 10, State's Response, p. 11.

3

a procedurally proper manner according to state court rules. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988).

Accordingly, in order to determine whether Ankerich exhausted his state court remedies, the Court must compare the claims asserted in the instant federal application to the claims Petitioner presented to the Louisiana Supreme Court. Ankerich's federal application asserts two claims, *i.e.* that his plea in the habitual offender proceedings was involuntary due to ineffective assistance of counsel, and his counsel was ineffective in failing to investigate his prior convictions and erroneously allowing him to plead guilty to the multiple offender charge. Those claims arguably were presented to the Louisiana Supreme Court in his writ application in case number 13–KH–1405. Accordingly, the Court finds that the claims are exhausted.[10]

## III. Standards of review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under

---

[10] Some confusion as to exhaustion may stem from the fact that Ankerich's claims of ineffective assistance of counsel, involuntary guilty plea and prosecutorial misconduct in the state courts went through some alterations at each level of review. In any event, even if Ankerich's claims are not technically exhausted, a federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the State. 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir.1998). Because Ankerich's claims clearly do not warrant relief, the undersigned recommends that they simply be denied on the merits.

law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and

footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:

> [A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.

*White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotations marks omitted).  The Supreme Court has also warned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.  A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section

6

> 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

## IV.   Discussion

Ankerich contends his guilty plea in the habitual offender proceedings was involuntary because his attorney failed to investigate his prior convictions before advising him to admit his prior conviction and plead guilty to being a second-felony offender.  Petitioner claims an investigation would have revealed that his prior convictions did not support an enhanced sentence.  He also claims he was informed by defense counsel that if he did not plead guilty to the multiple bill as a second-felony offender, the State was prepared to charge him as a fourth-felony offender which carries a potential life sentence.

The state district court analyzed Ankerich's claims that counsel failed to act in his best interest during the multiple offender adjudication and prosecutorial misconduct during plea negotiations.  Although the district court found that the claims were procedurally barred, it also ruled on the merits that Ankerich had not met his burden of proof on either claim.  The district court found that his allegations were purely speculative and without any evidentiary

support.[11]

In reviewing the state district court's decision, the court of appeal denied relief as follows:

> In his writ application, relator claims he had ineffective assistance of counsel because lead retained counsel left relator in the hands of a "junior associate" of retained counsel's firm.  Relator contends that he had agreed to plead guilty in exchange for a term of 6½ years imprisonment; however, prior to the plea, his lead attorney left the court room and the prosecutor changed the plea offer.  He contends that he was coerced into accepting the plea offer which included a 20-year sentence as a multiple offender because of the threat of being charged as a fourth felony offender and facing a possible life sentence.
>
> To establish ineffective assistance of counsel, a defendant must prove both that his attorney's performance was deficient and he was prejudiced by this deficiency.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to show prejudice, the defendant must demonstrate that but for his counsel's deficiency, the outcome would have been different.  *Id.*
>
> In his writ application, relator admits that he could have been charged as a fourth felony offender and subject to possible life imprisonment.  Thus, relator who faced a possible life sentence, benefitted from a plea bargain in which he received a 20-year sentence.  Against this backdrop, relator fails to show that there was a reasonable probability that, but for counsel's alleged deficiency, he would not have pleaded guilty and would have insisted on going to trial.[12]

The Louisiana Supreme Court denied relief without additional comment.

"It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709 (1969)).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review." *Frank v.*

---

[11] State Rec., Vol. 1 of 3, *State v. Ankerich*, No. 11-1196 "N" (District Court Order).

[12] State Rec., Vol. 1 of 3, *State v. Ankerich*, 13-KH-431 (La. App. 5th Cir. May 24, 2013).

*Blackburn*, 646 F.2d 873, 882 (5th Cir.1980), *modified on other grounds*, 646 F.2d 902 (5th Cir.), *cert. denied*, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981). For a plea to be considered knowing, "the defendant must have a full understanding of what the plea connotes and of its consequence." *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir.2000) (citing *Boykin*, 395 U.S. at 244). A "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." *Id. at* 254 n. 3. When a *habeas* petitioner challenges the validity of his guilty plea, he carries the burden of proving his plea was not in fact knowing and voluntary. *See e.g.*, *Hines v. Louisiana*, 102 F.Supp.2d 690, 694 (E.D. La. 2000).

A defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which includes entry of a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To prevail on an ineffective assistance claim, a petitioner must demonstrate *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hill*, 474 U.S. at 58 (applying *Strickland's* two-part test to guilty plea challenge based on ineffective assistance of counsel).

To satisfy the first prong of *Strickland*, a petitioner must show that counsel's errors were so serious that his performance fell below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001); *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). The "prejudice" requirement hinges on whether counsel's constitutionally defective performance

caused the petitioner to plead guilty. *Hill*, 474 U.S. at 58-59. In other words, the petitioner must prove "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Joseph v. Butler*, 838 F.2d 786, 791 (5ᵗʰ Cir. 1988) (holding that with respect to a claim of ineffective assistance involving an habitual offender plea, "it is [the petitioner's] burden to demonstrate a reasonable probability that, but for counsel's errors, he would not have admitted his prior convictions and would have demanded a trial on the multiple offender charge.").

Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5ᵗʰ Cir. 1993). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

Because the state courts rejected Ankerich's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). The standard of judicial review applicable to ineffective assistance of counsel claims under §2254(d) is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009); *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (reaffirming that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and

when the two apply in tandem, review is doubly so."). Thus, when a claim of ineffective assistance of counsel is raised in a federal *habeas* petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ––––, 131 S.Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S.Ct. at 786 (internal quotation marks and citation omitted).

In analyzing Ankerich's claims of ineffective assistance of counsel in this case, the Louisiana Fifth Circuit Court of Appeal articulated the proper standard for proving ineffective assistance of counsel as established by the Supreme Court in *Strickland*. Having articulated the appropriate standard, the court then addressed the claims and concluded that Ankerich had failed to prove ineffective assistance of counsel based on his attorney's advising him to plead guilty as a second-felony offender. The state appellate court noted that pursuant to his own admission, he could have been charged as a fourth-felony offender subject to possible life imprisonment, and that under the circumstances he failed to show there was a reasonable probability that, but for counsel's alleged deficiency, he would not have pleaded guilty and instead insisted on going to trial.

The state court's decision is fully supported by the record. Ankerich contends that his

counsel was ineffective in erroneously advising him to plead guilty to the multiple offender bill and admit to the predicate conviction when counsel had not conducted any investigation regarding his prior convictions.  Petitioner does not dispute that he entered a plea of guilty in the State of Texas to charges of theft and unauthorized use of a motor vehicle or that he had two prior felony convictions for burglary in the State of Oregon.[13]  In fact, he concedes he is a fourth-felony offender.  However, he claims the Texas conviction on which the multiple bill of information in this case was based is invalid because the conviction violated double jeopardy principles.  He asserts that counsel would have discovered this had he investigated those prior convictions.  Furthermore, he argues investigation would have revealed that the State could not have used the Oregon convictions to support an enhanced sentence because the ten-year cleansing period for those convictions had elapsed.

First, Ankerich's assertions with regard to the validity of his Oregon burglary convictions lack any factual basis in this case.  His current sentence was not enhanced using those prior convictions.  Second, his assertion that counsel failed to investigate his prior Texas conviction is not only unsupported, but actually refuted, by the state court record in this case.  Defense counsel personally reviewed all pertinent documents, including the guilty plea agreement entered by Ankerich, in connection with the predicate offense upon which the State

---

[13] State Rec., Vol. 1 of 3, writ application to the Louisiana Supreme Court in 13-KH-431, Items 4 and 5 attached as exhibits to the writ are copies of the 1994 grand jury indictment in the State of Texas, which includes enhancement paragraphs based on the prior Oregon convictions, and Petitioner's guilty plea in the Texas case.

relied, and found no deficiencies that would preclude its use for enhancement.[14]

As evidenced by the transcript of his guilty plea proceedings in this case, Ankerich clearly made an informed and voluntary decision to enter his guilty plea to the multiple offender bill after fully reviewing and discussing with counsel the multiple bill of information and all relevant documents pertaining to the prior Texas conviction.[15]  The transcript of the guilty plea hearing demonstrates that Ankerich understood the State was charging him as a second-felony offender and that he had the right to dispute that he was in fact a second offender.  During his colloquy, Ankerich acknowledged that he had reviewed and discussed the multiple offender bill with his attorney.  Defense counsel gave him another opportunity during the hearing to review the multiple offender bill of information, as well as certified copies of the prior Texas conviction, but Ankerich declined.[16]  Ankerich admitted on the record that he was a double offender.  He informed the trial court that he understood all of the rights he was giving up by entering a plea of guilty to the multiple offender bill and that he could assert a plea of not guilty and require the State to prove his prior conviction underlying the multiple offender charge.  Ankerich also stated he was generally satisfied with his attorney's

---

[14] Notably, Ankerich does not indicate he has ever attempted to challenge his 1994 guilty plea in the State of Texas.  He is precluded from collaterally challenging that conviction based on his guilty plea.  Generally, when a prisoner pleads guilty to a predicate conviction and guilty as a multiple offender he is precluded from attacking the validity of his convictions. *See Ellis v. Lynaugh*, 883 F.2d 363, 366 (5th Cir.1989); *Long v. McCotter*, 792 F.2d 1338 (5th Cir.1986).

[15] State Rec., Vol. 1 of 3, Transcript of guilty plea/sentencing, pp. 6-10.

[16] State Rec., Vol. 1 of 3, Transcript of guilty plea/sentencing proceedings, p. 7.

representation.  The trial court accepted his guilty plea to the multiple offender bill as knowingly, intelligently, freely and voluntarily made.  Ankerich has not shown on this record that his attorney's advice during plea negotiations was constitutionally ineffective, rendering his plea involuntary or unknowing, based on an alleged failure to investigate the prior Texas conviction.

Nor has Ankerich established that his decision to plead guilty was coerced by any misrepresentation or misstatement by counsel that he could be charged as a fourth-felony offender.  Ankerich offers nothing to support his assertion that counsel misrepresented the potential risk of not pleading guilty to the habitual offender charge.  The record shows that Ankerich is indeed a fourth-felony offender, a fact he does not dispute.  Although he argues the Oregon convictions could not have been used for enhancement, he points to no evidence to support his contention.  The state court record does not include any documentation associated with these convictions, as they were not part of the plea agreement in this case.   Indeed, on the record presented, any discussions counsel may have had with Ankerich about the possibility he could face a potential risk of being charged as a fourth-felony offender would certainly appear to fall within the range of objectively reasonable competent advice given Ankerich's criminal history.

Moreover, Ankerich cannot show the necessary prejudice to support his claim.  Although he claims he would not have pleaded guilty and would have insisted on a hearing for the State to prove the multiple offender charge had his counsel investigated the prior convictions, his assertion is both unsupported and objectively unreasonable.  His guilty plea

was entered pursuant to a favorable and beneficial plea bargain which resulted in him receiving a more lenient sentence.  Although Ankerich was sentenced to twenty (20) years imprisonment as a second-felony offender in these proceedings, he faced an enhanced sentence of up to twenty-four (24) years imprisonment as a second-felony offender.  *See* La. R.S. 14:62.2 ("Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years") and La. R.S. 15:529.1 (A)(1)(a) ("If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction....").  Furthermore, as the state court of appeal correctly concluded, Ankerich received a clear benefit from not facing the possibility of being billed as a fourth-felony offender and the imposition of a life sentence.  *See* La. R.S. 15:529.1(A)(4)(a) ("If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then: (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event more than his natural life.").  Under these circumstances, Ankerich fails to demonstrate under *Strickland* a reasonable probability that, but for counsel's failure to investigate the prior convictions, he would not have admitted his prior felony conviction and would have demanded a trial on the multiple offender charge.

For all the foregoing reasons, the Court finds that Ankerich has not demonstrated that the state court's decision rejecting his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1). Accordingly, the Court should deny the claims.

## RECOMMENDATION

**IT IS RECOMMENDED** that Ankerich's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[17]

New Orleans, Louisiana, this 29th day of ___January___, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[17] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.